1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

PERFORMANCE DESIGNED
PRODUCTS LLC,

CASE NO. 16cv629-GPC(RBB)

11

**ORDER GRANTING
DEFENDANT'S MOTION TO
DISMISS**

Plaintiff,

12

v.

13

[Dkt. No. 14.]

MAD CATZ, INC. a Delaware
corporation; and DOES 1-10,
inclusive,

14
15

Defendants.

16
17

Before the Court is Defendant's motion to dismiss the complaint for failing to

18

state a claim.  (Dkt. No. 14.)  An opposition and reply were filed.  (Dkt. Nos. 16, 17.)

19

The Court finds the matter suitable for resolution without oral argument pursuant to

20

Local Civil Rule 7.1(d)(1).  After a review of the complaint, briefing by the parties, and

21

the applicable law, the Court GRANTS Defendant's motion to dismiss with prejudice.

22

**Background**

23

Plaintiff Performance Designed Products LLC ("PDP") is a company, based in

24

Burbank, California, that designs and manufactures video game accessories.  (Dkt. No.

25

1, Compl. ¶ 8.)  PDP has been providing video game accessories to the world market

26

for over a decade.  (Id.)  PDP is an innovator in the field of video game accessories and

27

holds multiple patents, including 'D078, a design patent ("D078 Patent Design").  (Id.;

28

Ex. A.)

1       Defendant Mad Catz, Inc. ("Mad Catz") is a worldwide provider of video game

2  accessories and sells its products throughout the United States, including California.

3  (Id. ¶ 9.)  According to the Complaint, Mad Catz sells the "Fight Pad Pro Controller"

4  ("Accused Controller"), which infringes the 'D078 Patent.  (Id. ¶ 10.)

5

6

| 'D078 Patent Design | Accused Controller |
|---|---|
|  | |

21       PDP claims that Mad Catz's Fight Pad Pro Controller has an overall appearance

22  that is confusingly similarly and substantially the same, in view of the prior art and in

23  the eyes of an ordinary observer.  (Id. ¶ 11.)  PDP alleges one cause of action for

24  infringement of design patent 'D078 pursuant to 35 U.S.C. § 271(a).  Mad Catz now

25  moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

26                             **Discussion**

27  **A.**    **Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

28       Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure

to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

**B.    Design Patent Infringement**

Plaintiff owns a design patent, 'D078, which claims an "ornamental design for an asymmetrical game controller",  (Dkt. No. 1-2, Compl., Ex. A), and claims that the Accused Controller infringes its design patent.

A "design patent, unlike a utility patent, limits protection to the ornamental design of the article." Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1293 (Fed. Cir. 2010) (citation omitted).  It protects the "novel, ornamental features of the patented design." OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997) (citing KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444, 1450 (Fed. Cir. 1993) (design patent protects the "non-functional aspects of an ornamental design as shown in a patent.")).

The Federal Circuit in Egyptian Goddess, abandoned the prior "point of novelty" test in the analysis of a claim of design patent infringement. Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 678 (Fed. Cir. 2008)  Rather, the court held that the "ordinary observer" test would be the sole test for determining whether a design patent has been infringed. Id.  Under the "ordinary observer" test, infringement will not be found unless the accused article "embod[ies] the patented design or any colorable imitation thereof." Id. (quoting Good Year Tire & Rubber Co., 162 F.3d 1113, 1116-17 (Fed. Cir. 1998)).  An accused product infringes a design patent when "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design."  Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing Egyptian Goddess, Inc., 543 F.3d at 681).  The Federal Circuit explained that in some cases, "the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer." Egyptian Goddess, Inc., 543 F.3d at 678.  In other cases, "when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the

two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art." Id.  When a hypothetical ordinary observer is conversant with the prior art, "the differences between the claimed and accused designs that might not be noticeable in the abstract can become significant." Id.

The "ordinary observer" test involves a two tiered approach.  The threshold question is whether, "without review of the prior art, the claimed and accused designs are sufficiently similar and, if so, the next level entailing a comparison to the prior art." Great Neck Saw Mfgs., Inc. v. Star Asia U.S.A., LLC, 727 F. Supp. 2d 1038, 1051-52 (W.D. Wash. 2010); see also Anderson v. Kimberly-Clark Corp., 570 F. App'x 927, 933-34 (Fed. Cir. 2014) (affirming district court's granting defendant's motion for judgment on the pleadings and reviewing the two tiered analysis of the district court); Wing Shing Prods. (BVI) Co. Ltd. v. Sunbeam Prods., Inc., 665 F. Supp. 2d 357, 365 (S.D.N.Y. 2009) (two level infringement analysis involves "a level-one or 'threshold' analysis to determine if comparison to the prior art is even necessary, and a second level analysis that accounts for prior art in less obvious cases.") In conducting its analysis, the court conducts a side by side visual comparison.  See Crocs, 598 F.3d at 1306-07; Ethicon Endo-Surgery, Inc. v. Covidien, Inc., 796 F.3d 1312, 1335 (Fed. Cir. 2015).

"Differences . . . must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation." Ethicon Endo-Surgery, Inc., 796 F.3d 1312, 1335 (Fed. Cir. 2015).  "It is the appearance of a design as a whole which is controlling in determining infringement. There can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar." OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997).

In Ethicon, the Federal Circuit agreed with the district court that the claimed and accused designs of an ultrasonic surgical device were plainly dissimilar and noted that the most notable difference was the "the overall contoured shape" of the claimed

design and the "overall linear shape" of the accused design and went on to discuss differences in the ornamentation of the trigger, torque knob and button elements of both designs.  Id. at 1336.

"[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444 (Fed. Cir. 1984).  But "[w]here the claimed and accused designs are 'sufficiently distinct' and 'plainly dissimilar,' the patentee fails to meet its burden of proving infringement as a matter of law." Ethicon Endo-Surgery, Inc., 796 F.3d at 1335.

**1.     Side-by-Side Comparison of 'D078 Patent and Accused Controller**

Mad Catz contends that in a side-by-side view comparison between the Accused Controller and the 'D078 Patent Design, the designs are not "substantially similar" but "plainly dissimilar" because the Accused Controller lacks the most prominent ornamental features, and does not remotely resemble the 'D078 Patent Design.

In response, PCP argues that Mad Catz improperly focuses on minor and trivial differences between the 'D078 Patent Design and the Accused Controller and fails to look at the overall similarity between the two designs.  PCP asserts that both designs share the following overall similarities that strongly support a finding of infringement. These are:

- the controllers are both significantly asymmetric in design;
- the left handgrip extends farther from the body of the controller than the right handgrip;
- both handgrips gradually taper to a blunt ending;
- the taper of the left handgrip is more gradual than the taper of the right hand grip; and
- the body of the controller outside of the handgrips is substantially trapezoidal with straight edges meeting at rounded corners and an indentation at the top of the controllers where the controller connects to a cord to the video game console.

(Dkt. No. 16 at 9[1].)  These similarities focus on the general asymmetric design and the trapezoidal shape of the body.

---

[1]Page numbers are based on the CM/ECF pagination.

In <u>Payless</u>, the Federal Circuit noted that the district court improperly articulated only one difference between the two different footwear designs in the heel pieces as opposed to the entirety of the patented design.  <u>Payless Shoesource, Inc. v. Reebok Intern'l Ltd.</u>, 998 F.2d 985, 990 (Fed. Cir. 1993).  By noting only one difference in the heel, the Federal Circuit held that the district court erred by failing to "consider the ornamental aspects of the design as a whole and not merely isolated portions of the patented design."  <u>Id.</u> at 991.

In a case cited by PDP, <u>Internat'l Seaway Trading Corp. v. Walgreens Corp.</u>, 589 F.3d 1233, 1243 (Fed. Cir. 2009), involving casual, lightweight footwear also known as clogs, the district court concluded that "slight variations on the number and position of the circular holes on the top of the shoe, the rectangular holes on the toe of the shoe as well as the design of different shaped rectangles on the sole of the shoe" are minor and should not be considered as part of the overall comparison, for purposes of anticipation and applying the ordinary observer test.  <u>Id.</u> at 1243.  "The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another."  <u>Id.</u>

In another case involving a design patent for cellular telephone handsets, the Federal Circuit affirmed the district court's grant of summary judgment of non-infringement.  <u>Kyocera Wireless Corp., v. President Elecs., Ltd.</u>, 116 F. App'x 282, 284-85 (Fed. Cir. 2004).  The differences noted by the district court between one of the accused products and the claimed designed was that the accused products "do not have as pronounced a curvature, have additional buttons, taller screens, and different arrays of holes in the earpiece."  <u>Id.</u> at 285.

After a side-by-side comparison of the Accused Controller and the 'D078 Design Patent, the Court concludes that, viewing the overall differences, the two designs are not "substantially the same" and an ordinary observer would not be deceived into believing that the accused product is the same as the patented design.  <u>See</u> <u>Egyptian</u>

Goddess, Inc., 543 F.3d at 678.  As a starting point, a notable difference between the two designs is that the 'D078 Patent Design is curved and rounded without angles while the Accused Controller is straight and squared with many angles giving it a boxy look.  The Court now addresses the additional overall differences between the two designs from the different views as presented in the 'D078 Design Patent.[2]

| Front Elevational View | |
|---|---|
| 'D078 Patent Design | Accused Controller |
|  FIG. 2 | |

The face surface of the 'D078 Design Patent is flat, level, and has a uniform

[2]These views are copied from Mad Catz' moving papers as they were able to be copied for the Court's use in its order and these pictures in Mad Catz' moving papers come from the 'D078 Design Patent attached to the Complaint as Exhibit A, (Dkt. No. 1-2 at 2), and photographs of the Accused Controller attached to the Marshall Declaration as Exhibit C. (Dkt. No. 14-5, Marshall Decl., Ex. C).  The parties do not dispute that the Court may consider the photographs that are not attached to the Complaint and consider them on a motion to dismiss.  See Andersen v. Kimberly-Clark Corp., 570 F. App'x 927, 932 (9th Cir. 2014) (no error by district court relying on patent, the prior art publication and photographs of the accused product attached to defendant's motion as they were all central to the complaint of design patent infringement and authenticity had not been called into question).

plane. The sides of the 'D078 Design Patent slowly indent inward in a straight line from bottom to top.  In contrast, the face of the Accused Controller slopes down at an angle from the upper portions to the handgrips.  The sides of the Accused Controller slopes outward until an angled point at the middle that alters the direction inward.

In addition, the handgrips of the 'D078 Design Patent both extend from the body, with the left handgrip extension longer than the right handgrip.  Also, the left and right handgrips of the 'D078 Design Patent come to a rounded, egg-shaped curved arc.  The underneath portion of the left and right handgrips are bulbous and the inner portions of both handgrips are curved and rounded.  As to the Accused Controller, the extension of the left handgrip is longer than the right handgrip similar to the 'D078 Design Patent; however, the left and right handgrips of the Accused Controller are straight with edges and right angles and square-like features.  Moreover, the underneath and inner portion of the left and right handgrips are flat and straight.

| Top Plan View | |
|---|---|
| 'D078 Design Patent | Accused Controller |
|   FIG. 6 |  |

Starting from the left side, the top side of the 'D078 Patent inclines upward, and then it curves downward and inward to form an indentation, and then curves upward and then declines to the end of the right side while the top side of the Accused Controller follows a straight path across the top of the body with a slight indentation

1    or angle on the top side.[3]

2

3

| **Bottom Side/Bottom Plan View** | |
|---|---|
| 'D078 Design Patent | Accused Controller |
|  FIG. 7 |  |

11        The bottom line of the 'D078 Patent is arched and curves from the left handgrip

12   to the right.  In contrast, the bottom line of the Accused Controller does not curve but

13   creates sharp angles from the left, then continues straight in a flat line, and then creates

14   another sharp angle on the right.

15   / / / /

16   / / / /

17   / / / /

18   / / / /

19   / / / /

20   / / / /

21   / / / /

22   ───────────────

23        [3]The parties dispute whether there is an indentation on the Accused Controller
     on the top side.  Mad Catz describes the top side as having "no indentation or angles."
24   (Dkt. No. 14-2 at 16.)  In opposition, PDP states that Mad Catz' statement that the top
     of the Accused Controller is flat is an erroneous misstatement because the pictures
25   show a visible indentation where the cord connects to the controller.  (Dkt. No. 16 at
     10 n. 5.)  In reply, Defendant maintains that if one looks at Exhibit C to the Marshall
26   Declaration, it is obvious that the top does not have an indentation and also notes that
     the functional buttons on the top right left and right are disclaimed by the patent.  (Dkt.
27   No. 17 at 9 n. 7.)  The top side of the 'D078 Design Patent is curved and has a notable
     deeper indentation than the Accused Controller.  The Accused Controller has a straight
28   top; however, there is a slight indentation formed by the functional buttons on the right
     and left top corner.

| Underneath /Rear Elevational View | |
|---|---|
| 'D078 Design Patent | Accused Controller |



The underneath portion of the 'D078 Patent is a flat, smooth uniform surface without ridges, angles, reliefs, and protrusions while the underneath portion of the Accused Product has pronounced ridges, angles, relief and protrusions.

| Left and Right Side Elevational View | |
|---|---|
| 'D078 Design Patent | Accused Controller |



1    The left and right sides of the body of the 'D078 Patent Design are curved or

2  rounded in a uniform fashion.  The left and right sides of the body of the Accused

3  Controller are straight with an angled bent in the middle.

4    While PCP argues that the differences asserted Mad Catz are trivial and minor,

5  it does not dispute the differences asserted by Mad Catz.[4]  As highlighted above, there

6  are numerous differences between the 'D078 Design Patent and the Accused Controller

7  and when viewing the design as a whole, it would be clear to an ordinary observer that

8  the two designs are "plainly dissimilar."  See Egyptian Goddess, 543 F.3d at 678.  The

9  similarities solely based on the asymmetric design and the trapezoidal shape noted by

10  PDP require the Court to look at these ornamental features in isolation, which is

11  procedural error.  See Ethicon Endo-Surgery, Inc., 796 F.3d at 1335.

12    The Court concludes that PDP's infringement claim is facially implausible, and

13  the Court GRANTS Mad Catz' motion to dismiss the claim for patent infringement.

14  Because the Court concludes that the Accused Controller and 'D078 Design Patent are

15  plainly dissimilar, it does not need to compare the two designs with the prior art.  See

16  Ethicon Endo-Surgery, Inc., 796 F.3d at 1337 ("comparing the claimed and accused

17  designs with the prior art is beneficial only when the claimed and accused designs are

18  not plainly dissimilar.")

19    **2.    Side-by-Side Comparison with Prior Art**

20    However, even if the Court concluded that the 'D078 Design Patent and Accused

21  Controller appear substantially the same, consideration of the prior art would reveal

22  that an ordinary observer would not be deceived into believing the Accused Controller

23  is the same as the 'D078 Design Patent.

24  _____

25    [4]PDP argues that contrary to Mad Catz description, its patent design is "not
completely curved but also includes straight edges running at angles along both sides,
26  and straight edges at the top on either side of the indentation." (Dkt. No. 16 at 10.)
Also, the top outside corners of both designs are rounded on both designs.  (Id.)
27  Moreover, PDP concedes there are angular differences along the sides of both designs
but those constitute minor differences.  (Id. at 10-11.)  These differences, asserted by
28  PDP, merely dispute the characterization of the design by Mad Catz as opposed to
highlighting significant similarities between the two designs.

"The second step requires that the patentee establish that an ordinary observer, familiar with the prior art designs, would be deceived into believing the accused product is the same as the patented product." <u>Seirus Innovative Accessories, Inc. v. Cabela's Inc.</u>, 827 F. Supp. 2d 1150, 1155 (S.D. Cal. 2011) (citing <u>Egyptian Goddess</u>, 643 F.3d at 672). "If the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing." <u>Egyptian Goddess</u>, 643 F.3d at 676. In addition, "strong similarities between the accused design and the prior art are an indication of non-infringement." <u>Wing Shing Prods.</u>, 665 F. Supp. 2d at 368. In <u>Wing Shing Products</u>, the district court rejected the plaintiff's argument that summary judgment cannot be granted because the accused product is "closer to the patented design than the prior art" and stated that the key question is whether an ordinary observer familiar with the prior art would believe that the accused product is the same as the patented design. <u>Id.</u>

Mad Catz produces four prior arts that are four design patents owned by it below:



| USD380783S | USD410,914 | USD415,752 | USD425,047 |

Mad Catz also produces three additional prior arts listed in 'D078 Patent Design as prior art below:

1
2
3
4
5
6
7
8



| USD435,551 | USD471,552 | USD585,931 |

9

10   Mad Catz contends when viewing the numerous prior art references for video
11  game controllers, the differences between the 'D078 Patent Design and the Accused
12  Controller become more apparent.  It contends that an observer would notice that the
13  appearance of the Accused Controller is more similar to the design in prior patents and
14  products.  PDP opposes arguing that the Accused Controller "differs more greatly from
15  the prior art than from the 'D078 Patented Design, and is in fact strikingly similar to
16  the 'D078 Patented Design."  (Dkt. No. 16 at 12.)  More specifically, PDP points out
17  that one conspicuous feature of the 'D078 Patent Design that is different from the prior
18  art is the significantly lower left handgrip compared with the shorter right handgrip.
19  (Id. at 13.)  PDP notes that six of the seven prior arts do not have an asymmetrical
20  handgrip while USD435,551 shows a slight asymmetrical shape but the asymmetry is
21  not as pronounced as the 'D078 Patent Design and the Accused Controller.  In reply,
22  Mad Catz argues that PDP concedes that a prior art discloses the same asymmetry and
23  the degree of asymmetry is not relevant to the analysis.  It also notes that PDP has
24  failed to identify a single similarity between the Accused Controller and the 'D078
25  Patent Design that is also not found in the prior art.
26   The question before the Court is whether an ordinary observer, familiar with the
27  seven prior arts pictured above would be deceived into believing that the Accused
28  Controller is the same as the 'D078 Design Patent.  See Egyptian Goddess, 543 F.3d

at 681.

PDP asserts the asymmetrical design is a unique feature of its 'D078 Design Patent.  However, prior art, USD435,551 has an asymmetrical feature where the left handle is slightly longer than the right handle.  This demonstrates that the unique asymmetric feature of the 'D078 Design Patent that PDP asserts was infringed by the Accused Controller, does not depart conspicuously from the prior art.  See Egyptian Goddess, 643 F.3d at 676.  Therefore, no infringement can be found based on the prior art.  See id.

## C.    Dismissal on Motion to Dismiss

Mad Catz has presented a number of cases where district courts have granted motions to dismiss design infringement claims based on the ordinary observer test.  See SCG Characters LLC v. Telebrands Corp., CV-15-00374 DDP (AGRx), 2015 WL 4624200, at *6 (C.D. Cal. Aug. 3, 2015); Anderson v. Kimberly-Clark Corp., 570 F. App'x 927, 931-34 (Fed. Cir. 2014); Colida v. Nokia, Inc., 347 F. App'x 568, 570 (Fed. Cir. 2009) (affirming district court's dismissal design patent infringement claims because "dissimilarities far exceed the similarities").

PDP argues that the Court should not dismiss the Complaint because the ordinary observer test is a question of fact and cites to cases that assert the proposition that the test for ordinary observer is a factual inquiry.  However, PDP cites to cases involving summary judgment motions where summary judgment was denied because of the existence of issues of fact for the jury.  These cases do not change the fact that it is clear without more that PDP has failed to prove that the two designs are "substantially the same to the ordinary observer."  Egyptian Goddess, Inc., 543 F.3d at 678.

Finally, the Court notes that other district courts have also granted motions to dismiss based on non-infringement of a design patent.  See Silverman v. Leombruni, 15 Civ. 2260 (PAC), 2016 WL 715735, at *2-3 (S.D.N.Y. Feb. 19, 2016); Legler v. Exxel Outdoors, Inc., No. 13-C-668, 2014 WL 3727566, *2-5 (E.D. Wis. July 29,

2014); <u>MSA Products, Inc. v. Nifty Home Products, Inc.</u>, No. 11cv5261 (WJM), 2012 WL 2132464, *3-4 (D.N.J. June 12, 2012) ("Although generally correct that infringement is usually a question of fact, MSA is wrong that the Court cannot determine infringement as a matter of law at the motion to dismiss stage. While not necessarily common, many courts have dismissed claims of design infringement on Rule 12(b)(6) motions where, as a matter of law, the court finds that no reasonable fact-finder could find infringement.") (citing cases).

Here, the Court finds that the 'D078 Design Patent and the Accused Controller are plainly dissimilar, and as a matter of law, the Court may grant a motion to dismiss. <u>See</u> <u>id.</u>; <u>Ethicon Endo-Surgery, Inc.</u>, 796 F.3d at 1335.

### Conclusion

Based on the above, the Court GRANTS Defendant's motion to dismiss with prejudice as leave to amend would be futile.  <u>See</u> <u>Desoto</u>, 957 F.2d at 658.

IT IS SO ORDERED.

DATED:  June 29, 2016

HON. GONZALO P. CURIEL
United States District Judge